## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| JORDAN ROSENBLATT, Individually and On Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) Case No. _____ ) |
| v. | ) JURY TRIAL DEMANDED ) |
| JERNIGAN CAPITAL, INC., JOHN A. GOOD, MARK O. DECKER, JAMES DONDERO, HOWARD A. SILVER, HARRY J. THIE, REBECCA OWEN, JERNIGAN CAPITAL OPERATING COMPANY, LLC, NEXPOINT RE MERGER, INC., and NEXPOINT RE MERGER OP, LLC, | ) CLASS ACTION ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on August 3, 2020 (the "Proposed Transaction"), pursuant to which Jernigan Capital, Inc. ("Jernigan" or the "Company") will be acquired by affiliates of NexPoint Advisors, L.P. ("NexPoint Advisors").

2. On August 3, 2020, Jernigan's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Jernigan Capital Operating Company, LLC (the "Operating Company"), NexPoint RE Merger, Inc. ("Parent"), and NexPoint RE Merger OP, LLC (the "Parent OP," and together with Parent, "NexPoint"). Pursuant to the terms of the Merger Agreement, Jernigan's

stockholders will receive $17.30 in cash for each share of Jernigan common stock they own.

3.  On August 20, 2020, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission (the "SEC") in connection with the Proposed Transaction.

4.  The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5.  This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6.  This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.  Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.  Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Jernigan common stock.

9.  Defendant Jernigan is a Maryland corporation and a party to the Merger Agreement. Jernigan's common stock is traded on the New York Stock Exchange under the ticker symbol

"JCAP."

10. Defendant John A. Good is Chief Executive Officer and Chairman of the Board of the Company.

11. Defendant Mark O. Decker is a director of the Company.

12. Defendant James Dondero ("Dondero") is a director of the Company. Dondero is the founder and President of NexPoint Advisors.

13. Defendant Howard A. Silver is a director of the Company.

14. Defendant Harry J. Thie is a director of the Company.

15. Defendant Rebecca Owen is a director of the Company.

16. The defendants identified in paragraphs 10 through 15 are collectively referred to herein as the "Individual Defendants."

17. Defendant Operating Company is a Delaware limited liability company and a party to the Merger Agreement.

18. Defendant Parent is a Maryland corporation and a party to the Merger Agreement.

19. Defendant Parent OP is a Delaware liability company, a subsidiary of Parent, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

20. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Jernigan (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

21. This action is properly maintainable as a class action.

22. The Class is so numerous that joinder of all members is impracticable. As of July 27, 2020, there were approximately 23,263,130 shares of Jernigan common stock outstanding, held

by hundreds, if not thousands, of individuals and entities scattered throughout the country.

23. Questions of law and fact are common to the Class, including, among others, whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

24. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

25. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

26. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

27. Jernigan is a real estate investment trust that provides debt and equity capital to private developers, owners, and operators of self-storage facilities with a view to eventual outright ownership of facilities the Company finances.

28. On August 3, 2020, Jernigan's Board caused the Company to enter into the Merger Agreement with NexPoint.

29. NexPoint and its affiliates collectively beneficially own all of the issued and outstanding shares of Series A preferred stock of the Company. Individual Defendant Dondero is the founder and President of NexPoint Advisors.

30. Pursuant to the terms of the Merger Agreement, Jernigan's stockholders will receive $17.30 in cash for each share of Jernigan common stock they own.

31. According to the press release announcing the Proposed Transaction:

> Jernigan Capital, Inc. (NYSE: JCAP) ("JCAP" or the "Company"), an owner of self-storage facilities and a leading capital partner for self-storage entrepreneurs nationwide, today announced that it has entered into a definitive merger agreement with an affiliate of NexPoint Advisors, L.P. (together "NexPoint") under which it will be acquired by NexPoint in an all-cash transaction valued at approximately $900 million, including debt and preferred stock to be assumed or refinanced (the "Merger Agreement"). The agreement has been unanimously approved by the Company's Board of Directors. The transaction was recommended to the Company's Board of Directors by a Transaction Committee consisting of all directors (other than Jim Dondero, founder and President of NexPoint) established to evaluate the transaction.
>
> Under the terms of the Merger Agreement, holders of JCAP's common stock and holders of units of operating company interests in Jernigan Capital Operating Company, LLC will receive $17.30 per share/unit in cash. This represents a 30% premium over the 90-day volume-weighted average share price ending July 31, 2020 and a 23% premium over the July 31, 2020 closing share price. Holders of the Company's Series B preferred stock will receive cash equal to $25.00 per share plus all accrued dividends (whether or not authorized or declared) up to, but excluding, the date the merger is consummated. . . .
>
> The transaction, which is currently expected to close in the fourth quarter of 2020, is subject to customary closing conditions, including the approval of JCAP's stockholders, who will vote on the transaction at a special meeting on a date to be announced. The transaction is not contingent on receipt of financing by NexPoint.
>
> Under the Merger Agreement, Jernigan Capital will discontinue its regular quarterly dividends.

Jefferies LLC is serving as exclusive financial advisor, and King & Spalding is serving as legal advisors to Jernigan Capital. Raymond James and KeyBanc Capital Markets are serving as financial advisors, and Winston & Strawn LLP is serving as legal advisors to NexPoint.

*The Proxy Statement Omits Material Information, Rendering It False and Misleading*

32. Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

33. As set forth below, the Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

34. First, the Proxy Statement omits material information regarding the Company's financial projections.

35. The Proxy Statement fails to disclose: (i) all line items used to calculate (a) owned net operating income, (b) EBITDA, (c) unlevered free cash flow, and (d) funds from operations; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

36. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

37. Second, the Proxy Statement omits material information regarding the analyses performed by the Company's financial advisor in connection with the Proposed Transaction, Jeffries LLC ("Jeffries").

38. With respect to Jeffries' Selected Public Company Analysis, the Proxy Statement fails to disclose the individual multiples and metrics for the companies observed in the analysis.

39. With respect to Jeffries' Selected Precedent Transactions Analysis, the Proxy Statement fails to disclose the individual multiples and metrics for the transactions observed in the analysis.

40. With respect to Jefferies' Net Asset Value Analysis, the Proxy Statement fails to disclose: (i) cash flow for owned properties and development investments as used in the analysis and all underlying line items; (ii) projected fair value of development investments as used in the analysis; (iii) the terminal values used in the analysis; (iv) Jefferies' basis for applying a range of exit capitalization rates of 5.1% to 5.5%; and (v) the individual inputs and assumptions underlying the discount rates of 9.5% to 10.8%.

41. With respect to Jefferies' Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) all line items used to calculate unlevered free cash flows; (ii) the individual inputs and assumptions underlying the discount rates ranging from 9.5% to 10.8%; and (iii) total debt, preferred equity, cash, and cash equivalents as used in the analysis.

42. With respect to Jefferies' analysis of premiums paid, the Proxy Statement fails to disclose: (i) the transactions observed in the analysis; and (ii) the premiums paid in the transactions.

43. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

44. Third, the Proxy Statement omits material information regarding Jefferies.

45. The Proxy Statement fails to disclose the timing and nature of the past services Jefferies provided to NexPoint and its affiliates.

46. Moreover, while the Proxy Statement provides that "Jefferies has, in the past, provided financial advisory and financing services to the Company and has received fees for the

rendering of such services," the Proxy Statement fails to disclose the timing and nature of the past services, and the amount of compensation Jefferies received for providing the services.

47. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

48. Fourth, the Proxy Statement fails to disclose whether the Company entered into any non-disclosure agreements that contained standstill and/or "don't ask, don't waive" provisions that are or were preventing other potential acquirors from submitting offers to acquire the Company.

49. Without this information, stockholders may have the mistaken belief that if potentially interested parties wished to come forward with a superior offer, they are or were permitted to do so, when in fact they are or were contractually prohibited from doing so.

50. Fifth, the Proxy Statement omits material information regarding the process leading up to the execution of the Merger Agreement.

51. The Proxy Statement fails to disclose the reasons the transaction committee of the Board that was created due to Individual Defendant Dondero's conflict of interest (the "Transaction Committee") was apparently not authorized to, and did not, retain its own independent financial and legal advisors.

52. The Proxy Statement fails to disclose "the maximum exchange ratio per share of the Company common stock that Party C was willing to consider in connection with the potential merger."

53. The Proxy Statement fails to disclose the reasons defendants "did not provide Party D with access to the virtual data room" after the Company executed a non-disclosure agreement with Party D on June 24, 2020, despite the fact that the Company had not entered into an

exclusivity agreement with NexPoint or Party C as of that time.

54. The Company's stockholders are entitled to an accurate description of the process leading up to the Proposed Transaction.

55. Sixth, the Proxy Statement fails to disclose the timing and nature of all communications regarding future employment and directorship of the Company's officers and directors, including who participated in all such communications.

56. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

57. The omission of the above-referenced material information renders the Proxy Statement false and misleading.

58. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Jernigan**

59. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

60. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Jernigan is liable as the issuer of these statements.

61.     The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

62.     The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

63.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

64.     The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

65.     By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

66.     Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and NexPoint

67.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

68.     The Individual Defendants and NexPoint acted as controlling persons of Jernigan within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Jernigan and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement,

they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

69. Each of the Individual Defendants and NexPoint was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

70. Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

71. By virtue of the foregoing, the Individual Defendants and NexPoint violated Section 20(a) of the 1934 Act.

72. As set forth above, the Individual Defendants and NexPoint had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

**PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: August 27, 2020                    **RIGRODSKY & LONG, P.A.**

                                          By: */s/ Gina M. Serra*
                                          Seth D. Rigrodsky (#3147)
                                          Brian D. Long (#4347)
                                          Gina M. Serra (#5387)
**OF COUNSEL:**                           300 Delaware Avenue, Suite 210
                                          Wilmington, DE 19801
**RM LAW, P.C.**                          Telephone: (302) 295-5310
Richard A. Maniskas                       Facsimile: (302) 654-7530
1055 Westlakes Drive, Suite 300           Email: sdr@rl-legal.com
Berwyn, PA 19312                          Email: bdl@rl-legal.com
Telephone: (484) 324-6800                 Email: gms@rl-legal.com
Facsimile: (484) 631-1305
Email: rm@maniskas.com                    *Attorneys for Plaintiff*